# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN WATERS, Individually and For Others Similarly Situated,** | Case No. _____ |
| **v.** | **JURY TRIAL DEMANDED** |
| **DAY & ZIMMERMANN NPS, INC.** | |

## COMPLAINT

### SUMMARY

1.      Day & Zimmermann NPS, Inc. (D&Z or Defendant) failed to pay John Waters (Waters) and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA).

2.      Instead, D&Z paid Waters and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or, "straight time for overtime").

3.      Waters brings this lawsuit to recover unpaid overtime wages and other damages owed under the FLSA.

### JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

6.      Waters resides and worked for D&Z in Plymouth, Massachusetts, in this District and Division.

### THE PARTIES

7.      During the relevant period, Waters was an hourly employee of D&Z. Throughout his employment with D&Z, Waters was paid the same hourly rate for all hours worked (including those

hours in excess of 40 hours in a single workweek) with no overtime compensation. His written consent is attached herein as Exhibit A.

8.      Waters brings this Action on behalf of himself and other similarly situated workers who were paid by D&Z's "straight time for overtime" system.

9.      The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All employees who worked for D&Z during the past 3 years who were paid straight time for overtime (the Putative Class Members).**

10.     Plaintiff seeks conditional and final certification of this Putative Class in this collective action under 29 U.S.C. § 216(b).

11.     D&Z is a for profit corporation incorporated in Delaware. D&Z may be served with process by serving its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## COVERAGE UNDER THE FLSA

12.     At all times hereinafter mentioned, D&Z was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13.     At all times hereinafter mentioned, D&Z was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

14.     At all times hereinafter mentioned, D&Z was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said

enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

15.     D&Z has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as hand tools, automobiles, computers, and cell phones.

16.     At all times hereinafter mentioned, Waters and the Putative Class Members were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

17.     D&Z is a full-service provider of power plant services.

18.     In order to provide services to its clients, D&Z hires employees it pays on an hourly basis.

19.     Waters worked for D&Z as a Mechanical Supervisor.

20.     Waters was employed by D&Z from the beginning of January 2018 until the end of May 2018.

21.     Waters was an hourly employee of D&Z.

22.     D&Z paid Waters $55.00 for every approved hour worked.

23.     Waters reported the hours he worked to D&Z on a regular basis.

24.     If Waters worked under 40 hours, he was only paid for the hours he worked.

25.     For example in the one week period ending on April 21, 2018, Waters worked 32 hours and was paid his regular hourly rate for all 32 hours.

26.     But Waters would work more than 40 hours in a week.

27.     The hours Waters worked are reflected in D&Z's payroll records.

28. D&Z paid Waters the same hourly rate for all hours worked, including those hours in excess of 40 hours in a single workweek.

29. D&Z did not pay Waters overtime for all hours worked in excess of 40 hours in a single workweek.

30. Rather than receiving time and half as required by the FLSA, Waters only received "straight time" pay for overtime hours worked.

31. This "straight time for overtime" payment scheme violates the FLSA.

32. D&Z was aware of the overtime requirements of the FLSA.

33. D&Z nonetheless failed to pay certain hourly employees, such as Waters, overtime.

34. Very little skill, training, or initiative, in terms of independent business initiative, was required of Waters to perform his job duties.

35. Indeed, the daily and weekly activities of Waters and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by D&Z.

36. Virtually every job function performed by Waters and the Putative Class Members was pre-determined by D&Z and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

37. Waters and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

38. Waters and the Putative Class Members performed routine manual and technical job duties that were largely dictated by D&Z.

39. Waters and the Putative Class Members perform substantially similar job duties and are subjected to similar policies and procedures which dictate the day-to-day activities performed by each person.

4

40.     Waters and the Putative Class Members also worked similar hours and were denied overtime because of the same illegal pay practice.

41.     Waters and the Putative Class Members regularly worked in excess of 40 hours each week.

42.     D&Z did not pay Waters and the Putative Class Members on a salary basis.

43.     D&Z paid Waters and the Putative Class Members "straight time for overtime."

44.     D&Z failed to pay Waters and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

45.     D&Z knew, or acted with reckless disregard for whether, Waters and the Putative Class Members were misclassified as exempt.

46.     D&Z's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

47.     The illegal pay practices D&Z imposed on Waters were imposed on the Putative Class Members.

48.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

49.     Numerous other individuals who worked with Waters were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by federal wage laws.

50.     Based on his experiences and tenure with D&Z, Waters is aware that D&Z's illegal practices were imposed on the Putative Class Members.

51.     The Putative Class Members were not paid overtime when they worked more than 40 hours per week.

52.     D&Z's failure to pay overtime at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

53.     Waters' experiences are therefore typical of the experiences of the Putative Class Members.

54.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

55.     Waters has no interests contrary to, or in conflict with, the Putative Class Members.

56.     Like each Putative Class Member, Waters has an interest in obtaining the unpaid overtime wages owed under federal law.

57.     The precise size and the identity of other Putative Class Members is ascertainable from the business records, tax records, and/or employee or personnel records maintained by D&Z.

58.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

59.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries and D&Z will reap the unjust benefits of violating the FLSA.

60.     Furthermore, even if some Putative Class Members could afford individual litigation against D&Z, it would be unduly burdensome to the judicial system.

61.     If individual actions were required to be brought by each Putative Class Member, it would necessarily result in a multiplicity of lawsuits and would create hardship to Putative Class Members, to D&Z, and to the Court.

62.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

63.     The questions of law and fact common to each of Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether D&Z required Waters and the Putative Class Members to work more than 40 hours during individual work weeks;

    b.    Whether D&Z's decision to pay Waters and the Putative Class Members straight time for overtime was made in good faith;

    c.    Whether D&Z paid Waters and the Putative Class Members on a salary basis;

    d.    Whether D&Z failed to pay Waters and the Putative Class Members at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;

    e.    Whether D&Z's violation of the FLSA was willful; and

    f.    Whether D&Z's illegal pay practices were applied to Waters and the Putative Class Members.

64.     Waters and the Putative Class Members sustained damages arising out of D&Z's illegal and uniform employment policy.

65.     Waters knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

66.     Waters will fairly and adequately represent and protect the interests of the Putative Class Members.

67.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## CAUSE OF ACTION

68.     By failing to pay Waters and the Putative Class Members overtime at one-and-one-half times their regular rates, D&Z violated the FLSA's overtime provisions.

69.     D&Z owes Waters and the Putative Class Members overtime pay at the proper overtime rate.

70.     Because D&Z knew, or showed reckless disregard for whether, its pay practices violated the FLSA, D&Z owes these wages for at least the past three years.

71.     D&Z is liable to Waters and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

72.     Waters and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

73.     Waters demands a Jury trial.

## PRAYER

74.     Waters prays for relief as follows:

  a.   An order allowing this action to proceed as a collective action under the FLSA and directing notice to all the other hourly workers like him;

  b.   A judgment finding D&Z liable to Waters and the Putative Class Members for unpaid overtime and an equal amount as liquidated damages;

  c.   An order awarding attorneys' fees, costs, expenses, and judgment interest; and

  d.   An award of such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Philip J Gordon*

**Philip J. Gordon**
Mass. BBO# 630989
**Kristen M. Hurley**
Mass. BBO# 658237
**GORDON LAW GROUP, LLP**
585 Boylston St.
Boston, MA 02116
617-536-1800 – Telephone
617-536-1802 – Facsimile
pgordon@gordonllp.com
khurley@gordonllp.com

AND

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
(pending *pro hac vice*)
**Richard M. Schreiber**
State Bar No. 24056278
(pending *pro hac vice*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
(pending *pro hac vice*)
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**