# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WATERS, Individually and for Others Similarly Situated,<br><br>v.<br><br>DAY & ZIMMERMAN NPS, INC. | Case No. 1:19-CV-11585-NMG<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216 |

## DECLARATION OF MICHAEL A. JOSEPHSON

I, Michael A. Josephson, state under penalty of perjury the following:

1. I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of the Parties' Settlement Agreement, Service Award, Attorneys' Fees, Costs, and Dismissal with Prejudice. I have personal knowledge of the factual matters set forth in this declaration and, if called to testify, could and would competently and truthfully testify thereto.

**Background**

2. Since April 2017, I have been a named partner at the law firm of Josephson Dunlap, LLP. Josephson Dunlap is an employment law firm with a national practice representing plaintiffs and specializing almost exclusively on cases involving violations of the Fair Labor Standards Act ("FLSA") and state wage and hour laws. Previously I was a named partner at Fibich, Leebron, Copeland, Briggs & Josephson ("FLCBJ"). FLCBJ is one of the preeminent plaintiff-oriented law firms in the country. While at FLCBJ, I was in charge of the firm's wage and hour practice for almost fourteen years.

3. I am licensed and in good standing to practice in both Texas and Pennsylvania. I have been practicing civil litigation continuously since being admitted to the Texas bar in December 2000. I have practiced law and been admitted pro hac vice in courts located throughout the country, including in Alabama, Alaska, Arizona, California, Colorado, Connecticut, Florida,

~ 1 ~

Georgia, Illinois, Indiana, Louisiana, Kentucky, Massachusetts, Michigan, Montana, Nebraska, New Hampshire, New Jersey, Ohio, Oklahoma, Mississippi, New Mexico, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington. I have never been sanctioned, disciplined, or otherwise admonished. No Court has ever declined to conditionally certify a class or collective action based on me or my firm's adequacy as class counsel.

4. A substantial portion of my time (and that of the other lawyers at Josephson Dunlap) is devoted to challenging illegal wage and hour practices on behalf of current and former employees and contractors. My practice has been a "hands-on" approach. I personally perform the case work in all stages of the litigation, from drafting the initial complaint to discovery and motion matters, settlement and to trial, and appeal, if necessary. When appropriate, my partners and associates will assist me in various capacities under my direct supervision. This "hands-on" approach has produced very favorable results in difficult and complex cases that have required a substantial amount of time, money, and effort.

5. I have been handling wage and hour lawsuits since 2002. During this time period I estimate that I have been the attorney of record as either lead counsel or co-counsel in over 1,500 class and collective actions or individual cases seeking damages for unpaid overtime and wages based on allegations that employees worked off-the-clock, were misclassified as exempt or as independent contractors, or were the victims of regular rate and/or technical violations of both state and federal wage laws. I estimate that I have represented tens of thousands of individuals over the years and have been involved in litigating cases involving almost every major industry, including against oil and gas production and service companies, energy industry, staffing companies, national food processors, retailers, transportation, government

agencies, call centers, chemical plants, technical companies, stadium service providers, medical staffing companies, and litigation service companies.

6. In my practice, I have litigated cases on behalf of workers in wage and hour cases and collective actions against the most respected firms in the United States. These firms include but are not limited to KL Gates; Seyfarth Shaw; Littler Mendelson; Morgan, Lewis & Bockius; Gardere Wynne; Ogletree Deakins; Hunton & Williams; Munger Tolles & Olson; Baker Botts; Jones Walker; Jackson Lewis; Norton Rose Fulbright; and Locke Lorde.

7. My co-counsel, Richard J. (Rex) Burch is the managing partner of Bruckner Burch, PLLC. He exclusively practices wage and hour individual, collective, and class actions nationwide. With over fifteen years of experience, multiple Courts have commented favorably on his firm's work. For example, Judge Castillo of the Northern District of Illinois noted Bruckner Burch consists of "highly experienced attorneys [that] have acted as class counsel in similar actions in federal and state courts." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 (N.D. Ill. 2010); *see also, Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE, 2012 WL 2458172, *2 (S.D.N.Y. June 28, 2012) (Bruckner Burch lawyers "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions"); *Diaz v. Scores Holding Co., Inc.*, 07 CIV. 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011) (Bruckner Burch employs "experienced employment lawyers with good reputations among the employment law bar").

**Waters' Agreement with Counsel**

8. Plaintiff retained our firm (as well as our co-counsel, Bruckner Burch and the Gordon Law Group—together "Counsel") to assist in recovery for claims for unpaid overtime against his and the putative class members' employer, Day & Zimmerman NPS, Inc. (D&Z).

9. Plaintiff's suit claimed that they and other workers were paid the same hourly rate for all hours worked, including those in excess of 40, without any overtime pay for hours worked in excess of 40 each week.

10. Plaintiff claimed that him and D&Z's other straight time for overtime workers were not paid on a salary basis and were owed overtime pay for the previous three years, along with liquidated damages, attorney fees, and costs, as provided for under the FLSA.

11. D&Z has denied, and continues to deny, that its employee classification and wage payment practices in any way violate the FLSA.

12. After being retained in this case, Counsel conducted a thorough and diligent investigation of Plaintiff's pay and D&Z; such as an examination of records provided by Plaintiff and research through the United States Department of Labor records.

13. Since fees and costs can be very significant in a FLSA individual or collective action, Counsel agreed to handle the matter on a contingency basis.

14. Plaintiff and Counsel agreed that they would pay a forty percent (40%) of contingent fee of any monies, interest, or property recovered—unless Counsel was able to recover a greater amount in fees awarded by a court or negotiated with the defendant. The agreement further called for Counsel to advance all costs necessary to investigate, evaluate and pursue the claims, which costs were to be reimbursed to Counsel out of the share of settlement money. Plaintiff and Counsel also agreed that there were no fees owed to Counsel in the event that no recovery was made.

**Underlying Litigation**

15. This litigation was filed against D&Z, which vigorously litigated this case. D&Z was represented by Keri Engelman of Morgan, Lewis & Bockius, LLP. Ms. Engelman took a lead

role. She and her firm are experienced and aggressive, and they expended great effort in defending their client in this matter.

16. Well before July 2019, myself and my firm spent a great deal of time and effort researching and analyzing case law and doing a deep dive into the issues in the case and D&Z's pay practices. This included interviewing multiple potential clients, their offer letters, and their pay records.

17. Since this case was filed as a collective action, it involved complex disputes related to salary basis issues and potential exemptions which D&Z maintains apply to Plaintiffs. Further, this case also involved complex appellate issues regarding personal jurisdiction of out of state Plaintiffs.

18. Among the issues that the Parties disputed included: whether the Court had personal jurisdiction over the out of state Plaintiffs; whether Plaintiffs were exempt from overtime under the FLSA; whether D&Z's pay practice met the salary basis test; Plaintiffs entitlement to recover any back wages; the reasonable relationship between the Plaintiffs' salary and the compensation actually paid; the good faith and willfulness of D&Z; the propriety of proceeding as a collective; and discovery disputes in general.

19. Counsel received or reviewed (internally, with opposing counsel, client, and from the Court) thousands of pages of documents, hundreds written communications, and drafted complex briefs regarding conditional certification, personal jurisdiction, discovery-related motions, and complex appellate briefs. Counsel prepared for and argued in front of the First Circuit which affirmed this Court's Opinion.

20. In the action, Counsel drafted and filed numerous contested pleadings.

21. Counsel has conferred telephonically with opposing counsel on numerous occasions regarding motion practice, discovery, deposition, scheduling, and settlement negotiations.

22. In preparation for settlement negotiations, Counsel reviewed thousands of documents produced by D&Z. Counsel also analyzed and prepared a detailed damage model which was used for settlement negotiations.

23. In all, the efforts of opposing counsel caused Counsel to expend a great deal of time and energy in the prosecution of this matter.

**Successful Resolution of this Case**

24. Successful handling of cases such as this requires particularized expertise and experience, qualities possessed by Counsel.

25. Counsel maintains a particular focus on FLSA litigation, particularly FLSA litigation involving classes of significant size.

26. Although Counsel is based in Texas, all three firms have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in Massachusetts, California, Illinois, Louisiana, New Mexico, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, New York, Virginia, West Virginia, New Jersey, Arizona, Florida, Georgia, North Carolina, South Carolina, Washington, and elsewhere. In recent years, Josephson Dunlap and Bruckner Burch's joint docket has carried over 250 cases involving collective action claims for energy industry workers, such as this case.

27. Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. The firm's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. In all, Counsel has secured hundreds of millions of dollars in settlements in FLSA cases for their clients.

28. The Parties to this matter reached a settlement agreement after extended, arm's-length negotiations between Counsel, including a full day mediations with experienced wage and hour mediator, Michael Russell.

29. In reaching the settlement and distribution of funds, I have not participated in any fraud or collusion. Nor am I aware of, nor do I believe there was, any fraud or collusion on the part of anyone in securing the settlement and distribution of funds.

30. Even though the fee agreement with Plaintiff called for a 40% contingency fee of the gross recovery, as well as the litigation expenses. The Parties separately negotiated attorneys' fees and costs in the amount of $335,000.00.

31. In my experience and to the best of my knowledge, firms operating on a contingency basis in similar cases most often seek attorney fees of roughly 40%, and sometimes as much as 45% if a final judgment has been entered. Further, based upon my knowledge and experience, the majority of firms operating today take the majority of, or all, contingency-based cases with an attorney fee agreement of 40% (and particularly those firms operating in the Texas legal market).

32. Regardless, Counsel was able to separately negotiate its fees apart from the amounts awarded to Plaintiffs. D&Z does not oppose Counsel's request for attorneys' fees and costs.

33. This case has been litigated as well as investigated by both sides since its inception. Any time a case is accepted of this magnitude and complexity, it is assumed that the resources necessary to prosecute such a case may preclude employment on other cases if not readily or successfully resolved.

34. Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which had we not recovered anything from D&Z, would have been lost, and Counsel would

have carried various advanced costs, as well as unrecoverable time spent. Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery.

35. Under the settlement, the gross settlement represents approximately 66% of the two-year damages and 54% of the three year damages. Further, even after attorneys' fees and costs, the net settlement to the Plaintiffs is approximately 38% of their two-year back wages and 31% of their three-year back wages.

36. Given all these facts and factors, the skills required to present the case, the time and costs expended to achieve the results, the reputation of counsel in the community, and the results achieved on behalf of the clients, the fees and litigation expenses requested for Plaintiffs' settlement as shown are reasonable. The total settlement is fair, reasonable, and adequate. The recovery by the Plaintiffs is well within the normal range for settlements of this nature which have been approved by courts nationwide.

37. Counsel and Plaintiffs all agree that approval of the settlement is in their best interest.

38. Therefore, the Court should approve the Parties' Settlement Agreement.

**Anticipated Work if Settlement Agreement is not Approved**

39. If the case were not settled, there would be extensive work to come, including dispositive motions, discovery disputes, depositions, and questions regarding applicability of the FLSA, good faith and willfulness, certification, decertification, and a trial on the merits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 14, 2022

*/s/ Michael A. Josephson*
_____
Michael A. Josephson